In re Waver C. HOLMES, Darlene C. Holmes.

R. Michael Bolen, United States Trustee, Plaintiff,

v.

Denvil F. Crowe, Defendant.

Bankruptcy No. 01–16818.
Adv. Proc. No. 02–1225.

United States Bankruptcy Court,
N.D. Mississippi.

Feb. 2, 2004.

John L. Daugherty, Office of General Counsel, Washington, DC, for R. Michael Bolen.

Robert Q. Whitwell, Farese, Farese & Farese, Ashland, MS, for Denvil F. Crowe.

## OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

On consideration before the court is a motion for partial summary judgment filed by the plaintiff, R. Michael Bolen, United States Trustee (UST); a response thereto having been filed by the defendant, Denvil F. Crowe (Crowe); and the court, having heard and considered same, hereby finds as follows, to-wit:

## I.

The court has jurisdiction of the parties to and the subject matter of this adversary proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157, in addition to the General Order of Reference entered by the United States District Court for the Northern District of Mississippi on July 27, 1984. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A).

## II.

The UST has filed an identical cause of action against Crowe in thirty-six bankruptcy cases in which Crowe was employed by and served as the attorney for the debtor(s). As a part of the complaint, the UST has asserted that Crowe in thirty-five of the thirty-six cases improperly induced his debtor clients to execute a living will/durable power of attorney for a separate fee of $250.00, in addition to the $1,500.00 fee paid for the bankruptcy representation. The UST contends that, since this additional fee was inextricably tied to the bankruptcy filing, that it should have been revealed by Crowe in his disclosure of compensation which is required by § 329 of the Bankruptcy Code and by Rule 2016(b) of the Federal Rules of Bankruptcy Procedure. The UST alleges that Crowe exploited his financially distressed clients by "cross-marketing" the living wills/durable powers of attorney on occasions when the clients were particularly vulnerable. (These "*form*" documents are actually entitled "Advance Health Care Directive" and "Durable General Power of Attorney." Substantively, they appear to be identical for each debtor.)

Crowe contends, to the contrary, that none of his clients were required to purchase a living will/durable power of attor-

ney, but that this was an option explained to each of them after the bankruptcy consultation had been concluded. He denies that these documents were connected to the bankruptcy cases.

In another part of the complaint, the UST has asserted that Crowe "split-fees" with his non-attorney employees by paying them $5.00 bonuses as incentives for the following events:

a. When the clients paid at least $300.00 and executed their retainer agreements.

b. When the clients completed and returned their bankruptcy questionnaires.

c. When the clients signed the living wills/durable powers of attorney.

In his memorandum of law, the UST summarized the counts in his complaint on which he is seeking summary judgment as follows, to-wit:

a. Count I: In thirty-five of the thirty-six cases, Crowe failed to disclose the $250.00 fee and his fee-sharing arrangements in violation of 11 U.S.C. § 329, and in all thirty-six cases, Crowe failed to disclose the fee-sharing arrangements in violation of Rule 2016, Federal Rules of Bankruptcy Procedure.

b. Count III: In all thirty-six cases, Crowe shared compensation with his non–attorney staff in violation of 11 U.S.C. § 504.

c. Count IV: In all thirty-six cases, Crowe shared compensation with his non–attorney staff in violation of the Mississippi Rules of Professional Conduct.

As such, insofar as the subject motion is concerned, there are actually only two questions to address:

a. Did Crowe improperly charge and fail to disclose the additional fee of $250.00 for the living wills/durable powers of attorney in connection with his bankruptcy representation of his debtor clients?

b. Did Crowe improperly engage in "fee-splitting" or "fee sharing" with his non–attorney staff members by paying the $5.00 incentive bonuses?

### III.

Summary judgment is properly granted when pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Bankruptcy Rule 7056; Uniform Local Bankruptcy Rule 18. The court must examine each issue in a light most favorable to the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Phillips v. OKC Corp.*, 812 F.2d 265 (5th Cir.1987); *Putman v. Insurance Co. of North America*, 673 F.Supp. 171 (N.D.Miss.1987). The moving party must demonstrate to the court the basis on which it believes that summary judgment is justified. The nonmoving party must then show that a genuine issue of material fact arises as to that issue. *Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Leonard v. Dixie Well Service & Supply, Inc.*, 828 F.2d 291 (5th Cir.1987), *Putman v. Insurance Co. of North America*, 673 F.Supp. 171 (N.D.Miss.1987). An issue is genuine if "there is sufficient evidence favoring the nonmoving party for a fact finder to find for that party." *Phillips*, 812 F.2d at 273. A fact is material if it would "affect the outcome of the lawsuit under the governing substantive law." *Phillips*, 812 F.2d at 272.

## IV.

*Did Crowe improperly charge and fail to disclose the additional fee of $250.00 for the living wills/durable powers of attorney in connection with his bankruptcy representation of his debtor clients?*

■ Section 329 of the Bankruptcy Code provides as follows, to-wit:

(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—

(1) the estate, if the property transferred—

(A) would have been property of the estate; or

(B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or

(2) the entity that made such payment.

■ One of the primary purposes of the aforementioned section is to prevent overreaching by a debtor's attorney. *See, Jensen v. U.S. Trustee (In re Smitty's Truck Stop)*, 210 B.R. 844 (10th Cir. BAP 1997); *In re Dixon*, 143 B.R. 671 (Bankr.N.D.Texas 1992); and *In re Mayeaux*, 269 B.R. 614 (Bankr.E.D.Texas 2001). The statute clearly applies to services rendered in contemplation of or in connection with the bankruptcy case. The extent to which the living wills/durable powers of attorney were connected to the debtors' bankruptcy cases is vigorously disputed in this proceeding.

Without question, Crowe received and did not disclose the separate $250.00 fee which he attributes to the preparation of the living wills/durable powers of attorney. Crowe contends, however, that his clients were not required to purchase these services, as well as, that the consultations about the need for these documents were separate and distinct from the consultations concerning the filing of the bankruptcy cases. From what the court has seen in the deposition extracts, the various affidavits that have been submitted, and the other discovery responses, there is a wide disparity in the versions of the events that occurred in Crowe's office as perceived by the UST and as perceived by Crowe. As such, the connectivity of the additional services to the filing of the bankruptcy cases is a material fact which obviously remains in dispute. It can only be resolved through the presentation of the witnesses' testimony in open court where that testimony can be subjected to cross-examination and the court's scrutiny.

Therefore, as to this issue, the court is of the opinion that the motion for partial summary judgment is not well taken. It will be overruled by a separate order to be entered contemporaneously herewith.

## V.

*Did Crowe improperly engage in "fee-splitting" or "fee-sharing" with his non-attorney staff members by paying the $5.00 incentive bonuses?*

■ There is no dispute that Crowe paid his non-attorney staff $5.00 bonuses

each time one of the following events occurred:

 a. When the clients paid at least $300.00 and executed a retainer agreement.
 b. When the clients completed and returned their bankruptcy questionnaires.
 c. When the clients signed the living wills/durable powers of attorney.

Excepting the total amount of the bonuses actually paid, the factual circumstances relevant to this question are undisputed. The question is, therefore, whether Crowe's practice of paying bonuses for the aforementioned events constitutes an impermissible "fee-splitting" or "fee-sharing" arrangement proscribed by § 504 of the Bankruptcy Code, Rule 2016(b) of the Federal Rules of Bankruptcy Procedure, and Rule 5.4(a) of the Mississippi Rules of Professional Conduct.

Section 504 of the Bankruptcy Code provides as follows:

(a) Except as provided in subsection (b) of this section, a person receiving compensation or reimbursement under section 503(b)(2) or 503(b)(4) of this title may not share or agree to share—

 (1) any such compensation or reimbursement with another person; or
 (2) any compensation or reimbursement received by another person under such sections.

(b)(1) A member, partner, or regular associate in a professional association, corporation, or partnership may share compensation or reimbursement received under section 503(b)(2) or 503(b)(4) of this title with another member, partner, or regular associate in such association, corporation, or partnership, and may share in any compensation or reimbursement received under such sections by another member, partner, or regular associate in such association, corporation, or partnership.

(2) An attorney for a creditor that files a petition under section 303 of this title may share compensation and reimbursement received under section 503(b)(4) of this title with any other attorney contributing to the services rendered or expenses incurred by such creditor's attorney.

The legislative history for this section succinctly provides clarity, to-wit:

Section 504 prohibits the sharing of compensation, or fee splitting, among attorneys, other professionals, or trustees. The section provides only two exceptions: partners or associates in the same professional association, partnership, or corporation may share compensation inter se; and attorneys for petitioning creditors that join in a petition commencing an involuntary case may share compensation. (H. Rept. No. 95–595 to accompany H.R. 8200, 95th Cong., 1st Sess. (1977) p. 356, U.S.Code Cong. & Admin.News 1978, pp. 5963, 6311–12.)

Rule 2016, Federal Rules of Bankruptcy Procedure, entitled Compensation for Services Rendered and Reimbursement of Expenses, provides, in pertinent part, as follows:

(b) DISCLOSURE OF COMPENSATION PAID OR PROMISED TO ATTORNEY FOR DEBTOR. Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 15 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity. The statement shall include the particulars of any such sharing or agreement to share by the attorney, but the details of

any agreement for the sharing of the compensation with a member or regular associate of the attorney's law firm shall not be required. A supplemental statement shall be filed and transmitted to the United States trustee within 15 days after any payment or agreement not previously disclosed.

Rule 5.4(a)(3), Miss. Rules of Professional Conduct, provides as follows:

Rule 5.4 Professional Independence of a Lawyer.

(a) A lawyer or law firm shall not share legal fees with a non-lawyer, except that:

(3) a lawyer or law firm may include non-lawyer employees in a compensation or retirement plan, even though the plan is based in whole or in part on a profit-sharing arrangement.

 The failure to disclose the sharing of fees with non-attorney staff members merits disgorgement. *See, In re Knights Groceries, Inc.*, 190 B.R. 966 (Bankr.M.D.Fla.1996). Even though the bonuses paid by Crowe would be considered fairly nominal, their propriety must be considered by the court. *In re Greer*, 271 B.R. 426 (Bankr.D.Mass.2002).

Crowe has attempted to distinguish a case relied upon by the UST, *Doe v. Condon*, 341 S.C. 22, 532 S.E.2d 879 (2000), which involved a lawyer's payments to a paralegal. In that case, three questions were presented: (1) could a paralegal employed by an attorney conduct seminars and answer questions relating to wills and trusts, (2) could a paralegal engage in estate planning, and (c) could a paralegal be compensated by profit-sharing based upon the volume of cases that the paralegal handled. The third issue is somewhat similar to Crowe's payment of the "motivational" bonuses to his employees. In the *Doe* case, the South Carolina Supreme Court held that all of the activities were impermissible. The court specifically not-

ed that Rule 5.4 of the Rules of Professional Conduct served to discourage the unauthorized practice of law by lay persons, as well as, prevented a non-lawyer from acquiring a pecuniary interest in the disposition of a case that could possibly take preeminence over the client's best interest. It is obvious that the bonuses, although nominal, served as an incentive to the non-lawyer employees to encourage Crowe's clients to file bankruptcy cases and to also execute the living wills/durable powers of attorney. Depending on the volume of business generated in Crowe's office, the totals of the bonuses could likely result in significant compensation for the non-lawyer employees.

In the opinion of the court, Crowe cannot avail himself of the exception to sharing fees with non-lawyer employees which is found in Rule 5.4(a)(3) of the Mississippi Rules of Professional Conduct. The $5.00 bonus arrangement was utilized by Crowe on a per event basis, primarily to stimulate the event. The Rule 5.4(a)(3) exception contemplates a compensation or retirement plan that is dependant on a periodic evaluation of the financial health of the law firm. *See, In the Matter of Charles F. Hear*, 755 N.E.2d 579 (Ind.2001); *Ungar v. Matarazzo Blumberg and Associates, P.C.*, 260 A.D.2d 485, 688 N.Y.S.2d 588 (1999); *Trotter v. Nelson*, 684 N.E.2d 1150 (Ind. 1997); and *In the Matter of Anonymous Member of the South Carolina Bar*, 295 S.C. 25, 367 S.E.2d 17 (1988). Each of the aforementioned cases stands for the proposition that fee-splitting arrangements with non-lawyers are contrary to public policy and are generally not allowable.

The court is of the opinion that Crowe has indeed shared compensation with his non-lawyer staff. This practice is not identical to the payment of salaries. Rather, it is a payment to motivate and encour-

age specific events. The arrangement conveys a pecuniary interest to the non-lawyer employee that is directly dependent on a decision that the client is called upon to make. This practice violates § 504(a) of the Bankruptcy Code in addition to Rule 5.4(a) of the Mississippi Rules of Professional Conduct. It also violates the disclosure requirements of Rule 2016(b) of the Federal Rules of Bankruptcy Procedure. As such, the motion for partial summary judgment filed by the UST is well taken as to Counts III and IV of the complaint. Crowe will be required to make an accounting to the court and to the UST of the total bonuses that he paid in connection with the thirty-six bankruptcy cases in question. This accounting must be furnished within thirty days from the date of the entry of this opinion. Thereafter, the court will direct appropriate relief.

An order will be entered consistent with this opinion.